**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| CRAIG CUNNINGHAM,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL DYNAMICS INFORMATION<br>TECHNOLOGY, INC.,<br><br>Defendant. | Civil Action No. 1:16-cv-545 (LO/TCB) |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**
**FOR LACK OF SUBJECT MATTER JURISDICTION AND**
**FAILURE TO JOIN A NECESSARY PARTY**

# **TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................................1

BACKGROUND ................................................................................................................2

I.     GDIT'S CONTRACT WITH CMS ......................................................................2

II.    MR. CUNNINGHAM AND HIS APPLICATION TO HEALTHCARE.GOV.................4

III.   CMS' DIRECTION TO GDIT TO CALL MR. CUNNINGHAM....................................6

STANDARDS OF REVIEW ..............................................................................................7

I.     MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION ...........7

II.    MOTION TO DISMISS FOR FAILURE TO JOIN A NECESSARY PARTY ................8

ARGUMENT ......................................................................................................................8

I.     THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE GDIT IS
      ENTITLED TO DERIVATIVE SOVEREIGN IMMUNITY. ...........................................8

      A.    Congress Did Not Waive the United States' Sovereign Immunity from
             TCPA Claims. .........................................................................................9

      B.    GDIT Performed under a Contract Validly Awarded by CMS. ...........10

      C.    The Contract Dictated, and CMS Directed, GDIT's Actions. ..............11

II.    THE COURT SHOULD DISMISS THE COMPLAINT FOR FAILURE TO JOIN
       CMS AS A NECESSARY AND INDISPENSABLE PARTY. ........................................13

      A.    CMS Is a Necessary Party....................................................................14

      B.    CMS Cannot Be Made a Party to the Action.......................................17

      C.    CMS Is Indispensable. ..........................................................................17

CONCLUSION...................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackerson v. Bean Dredging LLC*,
   589 F.3d 196 (5th Cir. 2009) ................................................... 9

*Adams v. Bain*,
   697 F.2d 1213 (4th Cir. 1982) ............................................... 7, 8

*ADI Const. of Virginia LLC v. Bordewick*,
   No. 1:13CV598 JCC/IDD, 2013 WL 3730084 (E.D. Va. July 12, 2013) ................... 14, 15, 18

*Am. Greyhound Racing, Inc. v. Hull*,
   305 F.3d 1015 (9th Cir. 2002) ............................................ 18, 19, 20

*Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*,
   369 F.3d 385 (4th Cir. 2004) ................................................. 1

*Butters v. Vance Int'l, Inc.*,
   225 F.3d 462 (4th Cir. 2000) ............................................... 9, 10

*Campbell-Ewald Co. v. Gomez*,
   136 S. Ct. 663 (2016) .................................................. 10, 11, 13, 18

*Clinton v. Babbitt*,
   180 F.3d 1081 (9th Cir. 1999) ............................................... 15

*Cunningham v. Credit Mgmt., L.P.*,
   No. 3:09-cv-1497-G (BF), 2010 WL 3791104 (N.D. Tex. Aug. 30, 2010) ................ 5

*Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*,
   276 F.3d 1150 (9th Cir. 2002) ........................................... 15, 17, 18

*Int'l Longshoremen's Ass'n v. Va. Int'l Terminals, Inc.*,
   914 F. Supp. 1335 (E.D. Va. 1996) ........................................... 7

*In re KBR, Inc., Burn Pit Litig.*,
   744 F.3d 326 (4th Cir. 2014) ............................................... 11, 13

*King v. Burwell*,
   135 S. Ct. 2480 (2015) ..................................................... 11

*Lane v. Pena*,
   518 U.S. 187 (1996) ........................................................ 10

*U.S. ex rel. Lopez v. Strayer Educ., Inc.*,
  698 F. Supp. 2d 633 (E.D. Va. 2010) .......................................................................8

*Mangold v. Analytic Servs., Inc.*,
  77 F.3d 1442 (4th Cir. 1996) ..................................................................................10

*Marina One, Inc. v. Jones*,
  29 F. Supp. 3d 669 (E.D. Va. 2014) .........................................................................8

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
  132 S. Ct. 2566 (2012) ............................................................................................11

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Rite Aid of S. Carolina, Inc.*,
  210 F.3d 246 (4th Cir. 2000) .............................................................13, 17, 18, 19

*Owens-Illinois, Inc. v. Meade*,
  186 F.3d 435 (4th Cir. 1999) .........................................................13, 14, 19

*Teamsters Local Union No. 171 v. Keal Driveaway Co.*,
  173 F.3d 915 (4th Cir. 1999) ..................................................................................20

*Velasco v. Government of Indonesia*,
  370 F.3d 392 (4th Cir. 2004) ....................................................................................8

*U.S. ex rel. Vuyyuru v. Jadhav*,
  555 F.3d 337 (4th Cir. 2009) ....................................................................................7

*Welch, Jr. v. United States*,
  409 F.3d 646 (4th Cir. 2005) ....................................................................................9

*Yashenko v. Harrah's NC Casino Co., LLC*,
  446 F.3d 541 (4th Cir. 2006) ....................................................................... *passim*

*Yearsley v. W.A. Ross Construction Company*,
  390 U.S. 18 (1940) ...............................................................................9, 10, 11, 13

**Statutes**

18 U.S.C. § 1001 ...........................................................................................................6

41 U.S.C. Div. C ..........................................................................................................10

42 U.S.C. § 18081 .........................................................................................................6

**Other Authorities**

48 C.F.R. § 42.1204 .......................................................................................................2

Fed. R. Civ. P. 12(b) ..................................................................................................7, 8

Fed. R. Civ. P. 19 ............................................................................................................... *passim*

Defendant General Dynamics Information Technology, Inc. ("GDIT"), by counsel, respectfully files this Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to Join a Necessary Party.

## INTRODUCTION[1]

Mr. Cunningham brings this putative class action against GDIT for alleged violations of the Telephone Consumer Protection Act ("TCPA") arising out of a telephone call in December 2015. But as Mr. Cunningham was informed on the day of the call, GDIT acted at the express direction of the U.S. Department of Health and Human Services, Centers for Medicare & Medicaid Services ("CMS") in making a public service call to Mr. Cunningham, consistent with the agency's congressionally-mandated duties under the Affordable Care Act ("ACA"). Therefore, GDIT is protected by derivative sovereign immunity such that Mr. Cunningham's claims should be dismissed for lack of subject matter jurisdiction.

In addition, the Complaint should be dismissed because CMS, a necessary and indispensable party under Fed. R. Civ. P. 19, cannot be joined as a party. Mr. Cunningham's claims directly challenge the legality of CMS' contract with GDIT and require this Court to decide whether CMS' consent procedures—which were implemented through its HealthCare.gov website without any participation from GDIT—violate the TCPA. Given CMS' interest in this case and the potential prejudice it will suffer from an adverse judgment, the Complaint should be dismissed for this additional reason because CMS cannot be joined as an immune sovereign.

---

[1] GDIT is filing a motion to dismiss for failure to state a claim concurrently herewith. In filing that motion, GDIT in no way concedes that this Court possesses subject matter jurisdiction. *See Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004) ("Subject-matter jurisdiction cannot be conferred by the parties, nor can a defect in subject-matter jurisdiction be waived by the parties.").

## BACKGROUND

### I.    GDIT's Contract with CMS

CMS is a government agency supporting, among other things, the congressionally-mandated public service of providing information to help applicants navigate the recently-enacted ACA.  Ex. 1 (Declaration of Deborah S. Lester ("CMS Decl.")) ¶¶ 3, 5; *see, e.g.*, ACA § 1411(e)(4)(A)(i).   On April 15, 2013, CMS awarded Contract No. HHSM-500-2013-00103C ("Contract") to Vangent, Inc., which subsequently merged into GDIT, for contact center operations support regarding CMS programs, including 1-800 MEDICARE and the Government's HealthCare.gov website.   CMS Decl. ¶ 4; Ex. 2 (Declaration of Brooks Bartenhagen ("GDIT Decl.")) ¶ 3.[2]   GDIT's work under the Contract supports CMS' implementation of the ACA.  *See* CMS Decl. Ex. A (HHSM-500-2013-00103C Attachment J-4, Statement of Work Modification 30) § 1.1.   The Contract's express objective, among other things, is to provide widely available contact centers to offer accurate information and customer service in an "effective and efficient" manner.  *See id.* § 3.

As part of the services GDIT provides under the Contract, CMS contracted with GDIT to "make outbound calls to support customer service needs."  *Id.* § 4.1.1.  The purpose of CMS' outbound public service calls is to provide an individual who has submitted an application on Healthcare.gov, such as Mr. Cunningham, with important information about obligations, deadlines, financial assistance, and/or potential tax consequences that could impact his health insurance coverage.  *See* CMS Decl. ¶¶ 4-5; GDIT Decl. ¶ 4.  Under the ACA, CMS has a duty to keep an applicant informed about the status of his application (*e.g.*, whether it is incomplete,

---

[2] Vangent, Inc., GDIT, and CMS executed a novation agreement pursuant to 48 C.F.R. § 42.1204 effective January 1, 2014 to reflect GDIT as the successor-in- interest to the Contract.  *See* GDIT Decl. ¶ 3.  For simplicity, we refer to the contractor throughout the pleadings as "GDIT."

whether he is eligible for coverage, or whether he is eligible for premium assistance).  *See* CMS

Decl. ¶ 5.  CMS uses private contractors like GDIT to perform this public service.  *See id.* ¶ 12.

In 2015, prior to the call to Mr. Cunningham,[3] CMS revised the Contract's Statement of

Work to require that GDIT use autodialing technology to initiate outbound telephone calls on

behalf of CMS.  CMS Decl. ¶ 4; GDIT Decl. ¶ 6.  Specifically, Section 4.1.1 of the Statement of

Work (defining the "operational requirements for all CCOs [call center operations]") directed use

of auto-dialers:

> 4.1.1 Telephone Inquiries
>
> The contractor shall answer inbound calls and provide complete responses to all
> telephone and TDD/TTY inquiries. If required, the contractor shall make
> outbound calls to support customer service needs. Outbound calls may include
> both live CSR outbound calls as well as auto-dial message campaigns (subject to
> state law) utilizing system generated call technology. This may include times
> when call wait times exceed acceptable customer service standards (i.e., 1 hour
> wait times) or times when an outbound call may deflect multiple future inbound
> calls. If necessary, the contractor shall recommend times when outbound calls are
> needed. These times will need prior approval by CMS. In order to support
> telephone inquiries, the contractor shall staff an operation with CSRs to handle
> annual call volume as developed with CMS and that aligns to the maximum
> seating capacity in the CCO sites.

CMS Decl. Ex. A § 4.1.1 (emphasis added).  Moreover, among the deliverables required by the

Contract, CMS required GDIT to provide daily "Auto Dialer Report[s]."  *Id.* § 16.

Notably, the Contract does not require GDIT to: (a) determine whether consent under the

TCPA is required; or (b) obtain consent from applicants.  *See* GDIT Decl. ¶ 8.  CMS obtains

consent from applicants to be contacted through an applicant's registration on the

HealthCare.gov website.  *See* CMS Decl. ¶ 7.  When an individual such as Mr. Cunningham fills

out his application, the individual accepts CMS' privacy policy by affirmatively checking an

---

[3]  GDIT will assume solely for purposes of its motions that a call was made to Mr. Cunningham
on December 2, 2015.

"Accept" box.    *Id.*; *see also* Ex. 3 at 3 (HealthCare.gov account creation page, https://www.healthcare.gov/marketplace/b/createaccount/).   The policy provides in pertinent part:

> We collect information including your email address or mobile phone number to deliver alerts or e-newsletters. We use this information to complete the subscription process and provide you with information. You can opt out of these communications at any time by editing your subscription preferences.
>
> . . .
>
> CMS uses the email address (or mobile phone number) you provide us to send emails or Short Message Service (SMS) messages related to the Health Insurance Marketplace, if you have given us permission to send you such emails and text messages.  CMS also may use the phone number you provide to call you about Marketplace coverage.

*See* CMS Decl. ¶ 7; Ex. 4 at 5, 7 (https://www.healthcare.gov/privacy/).    The words "subscription preferences" are embedded with a hyperlink, which facilitates opting out by allowing an individual to click on the hyperlink in order to opt out of the informational public service messages.  *See* CMS Decl. ¶ 7; Ex. 4.

Therefore, CMS is responsible for and obtains consent through the applicant registration process.  *See* CMS Decl. ¶ 7; Ex. 4; GDIT Decl. ¶ 8.  For calls like the one made to Mr. Cunningham, CMS does not contract with (or otherwise require or expect) GDIT to obtain consent from the applicant, and by virtue of instructions from CMS only to place a call to a particular telephone number, GDIT has no pre-call contact with the applicant to obtain consent before a call.  GDIT Decl. ¶ 8.

## II.    MR. CUNNINGHAM AND HIS APPLICATION TO HEALTHCARE.GOV

Plaintiff Cunningham is a serial litigant.    *See* Ex. 5.  According to news reports, Mr. Cunningham began filing consumer-protection-related lawsuits in or around 2005.  *Id.* at 2-3. The articles also disclose that Mr. Cunningham began entrapping debt collectors by recording

4

calls during which he would ask targeted questions designed to elicit an unlawful statement from the caller.[4]  *See id.* at 3.

On or about November 18, 2015, an individual claiming to be "Greg Cunningham" initiated an application on the HealthCare.gov website.  CMS Decl. ¶ 6.  As part of that process, "Greg Cunningham" provided the telephone number identified in Paragraph 15 of Mr. Cunningham's Complaint, as well as a street address, social security number, and a birth date.  *See id.*; GDIT Decl. ¶ 13.   While completing his application, "Greg Cunningham" clicked "Accept" with respect to CMS' privacy policy statement above, thereby agreeing to the use of the telephone number he submitted to provide him with information.  *See* CMS Decl. ¶¶ 7-8.

Because the number provided by "Greg Cunningham" is the same number that Mr. Cunningham identifies in his Complaint, it appears that Mr. Cunningham initiated the application process on HealthCare.gov using a pseudonym.   Given Mr. Cunningham's propensity to file TCPA suits, this suggests that Mr. Cunningham planned from the outset to manufacture a claim that he was solicited by telephone without consent in violation of the TCPA.   That is, by submitting his application and telephone number under the name "Greg Cunningham," Mr. Cunningham appears to have created the appearance that he was called without providing his telephone number to CMS, when in fact his number was supplied in the "Greg Cunningham"

---

[4] In total, a PACER search revealed that Mr. Cunningham has been the plaintiff in at least 72 federal cases, 18 of which remain open.  It appears that a large percentage of Mr. Cunningham's federal cases are TCPA cases.   Mr. Cunningham has already been criticized by at least one federal court for his "attempts to multiply his claims," including by "asking questions in hope that he could construe the answer" as violating the relevant federal consumer-protection statute. *Cunningham v. Credit Mgmt., L.P.*, No. 3:09-cv-1497-G (BF), 2010 WL 3791104, at *6 (N.D. Tex. Aug. 30, 2010).

application.  The submission of an application to HealthCare.gov using "Greg Cunningham" may constitute a prohibited false statement to the Government.[5]

## III.   CMS' DIRECTION TO GDIT TO CALL MR. CUNNINGHAM

On or about December 1, 2015, CMS directed GDIT to call the telephone number Mr. Cunningham supplied to CMS, because he had started his application on HealthCare.gov but had not yet completed the enrollment process.  *See* CMS Decl. ¶¶ 8-10; GDIT Decl. ¶ 12; Ex. 6.  For the call to Mr. Cunningham, CMS (a) provided GDIT the exact script for the outbound call; (b) provided GDIT the telephone number to be called but no other information about the individual to be called; and (c) directed GDIT to execute the call by autodial on a specific date at a specific time.  *See* CMS Decl. ¶¶ 8-9; GDIT Decl. ¶¶ 9, 11-13; *see also* Ex. 6 (instructions stating that the calls were to be "Auto Dial").  The script provided to GDIT from CMS stated as follows:

> Hello! This is an important message from HealthCare.gov. The deadline to enroll in a 2016 health insurance plan is coming soon.  You may be able to qualify for financial help to make health insurance more affordable. With financial help, most people can find plans for $75 or less per month. Visit HealthCare.gov today to see how much you can save.  If you have questions, you can call the Health Insurance Marketplace to talk to a trained enrollment specialist at 1-800-318-2596…That's 1-800-318-2596. We are available 24 hours a day and the call is free.  Don't forget - the deadline to enroll is Tuesday, December 15th.  If you've already taken action and have 2016 health coverage, please ignore this message. Thank You! Goodbye.

Ex. 7 at 13.  Mr. Cunningham alleges that GDIT made the call to him on December 2, 2015, and the Complaint's recitation of the call establishes that GDIT did not alter the script provided by CMS.  *Compare id. with* Compl. ¶ 15.

The call to Mr. Cunningham did not advertise or telemarket health insurance or any other product or otherwise sell commercial products.  *See* Ex. 7 at 13.  Nor did the call provide

---

[5]  *See* 42 U.S.C. § 18081(h)(1)(B) (stating that "[a]ny person who knowingly and willfully provides false or fraudulent information . . . shall be subject . . . to a civil penalty of not more than $250,000" along with any other penalties prescribed by law); *see also* 18 U.S.C. § 1001.

information about <u>any</u> commercial entities or specific health plans.  *See id.*  Indeed, neither

CMS, nor HealthCare.gov, nor GDIT sells healthcare plans.  CMS Decl. ¶ 11; GDIT Decl. ¶ 10.

Rather, the purpose of the call was to remind Mr. Cunningham, who had initiated contact with

HealthCare.gov, that open enrollment was coming to an end and to notify him that he may be

eligible for federal financial assistance.  CMS Decl. ¶ 10.  The public-service call was thus

informational in nature, not commercial or pecuniary.

## STANDARDS OF REVIEW

### I.   MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

A motion to dismiss for lack of subject matter jurisdiction is governed by Fed. R. Civ. P.

12(b)(1).  Such a motion can attack subject matter jurisdiction in one of two ways: (1) by

asserting that the complaint fails to allege facts upon which subject matter jurisdiction can be

based; or (2) by alleging that the jurisdictional facts alleged are not true.  *See Adams v. Bain*, 697

F.2d 1213, 1219 (4th Cir. 1982).  For the latter, "[t]he burden of proving subject matter

jurisdiction on a motion to dismiss is on the plaintiff, the party asserting jurisdiction."  *Id.*; *see

also Int'l Longshoremen's Ass'n v. Va. Int'l Terminals, Inc.*, 914 F. Supp. 1335, 1338 (E.D. Va.

1996).  The plaintiff must demonstrate "the truth of such facts by a preponderance of the

evidence."  *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009).

"In considering a motion to dismiss made pursuant [to] FED. R. CIV. P. 12(b)(1) which

attacks the viability of jurisdictionally significant allegations, the Court may probe into the

record and is not required to accept all jurisdictional allegations by the nonmoving party as true,

as it would in a motion made under Rule 12(b)(6) or a 'facial' attack to jurisdiction under

12(b)(1)."  *U.S. ex rel. Lopez v. Strayer Educ., Inc.*, 698 F. Supp. 2d 633, 365 (E.D. Va. 2010).

The court "may regard the pleadings as mere evidence on the issue and may consider evidence

outside the pleadings without converting the proceeding to one for summary judgment."  *Velasco*

*v. Government of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also Adams*, 697 F.2d at 1219 ("A trial court may consider evidence by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment.").  "Unlike the procedure in a 12(b)(6) motion where there is a presumption reserving the truth finding role to the ultimate factfinder," the court deciding a 12(b)(1) motion based on evidence outside the pleadings "weighs the evidence to determine its jurisdiction."  *Adams*, 697 F.2d at 1219.

## II.     MOTION TO DISMISS FOR FAILURE TO JOIN A NECESSARY PARTY

A motion to dismiss for failure to join a necessary and indispensable party is governed by Fed. R. Civ. P. 12(b)(7) and 19.  The party asserting the Rule 12(b)(7) defense bears the burden of demonstrating that the entity not joined is necessary and indispensable.  *Marina One, Inc. v. Jones*, 29 F. Supp. 3d 669, 674 (E.D. Va. 2014).  In deciding the motion, the Court may consider evidence presented outside the pleadings.  *See id.*

## ARGUMENT

## I.     THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE GDIT IS ENTITLED TO DERIVATIVE SOVEREIGN IMMUNITY.

Federal courts courts have long applied the "well-settled law that contractors and common law agents acting within the scope of their employment for the United States have derivative sovereign immunity."  *Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 466 (4th Cir. 2000).  As the Supreme Court held more than 75 years ago in *Yearsley v. W.A. Ross Construction Company*, 390 U.S. 18 (1940), the United States' sovereign immunity extends to a contractor's acts in performance of a federal contract when (1) the Government's sovereign immunity has not been waived; (2) the authority to carry out the contract is validly conferred; and (3) the contractor performed the contract as directed by the Government.  *Id.* at 20-21.  All three conditions are present here, thus immunizing GDIT from Mr. Cunningham's claim and depriving

this Court of subject matter jurisdiction. *See Butters*, 225 F.3d at 465 (affirming lack of jurisdiction over claim against contractor because derivative sovereign immunity applied).

Indeed, the Complaint can be dismissed on its face because Mr. Cunningham failed to plead subject matter jurisdiction. That is, the Complaint does not "allege that the Contractor Defendant[] exceeded [its] authority or in any way deviated from Congress's direction or expectations" for implementing the ACA. *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009) (upholding the district court's dismissal of a class action suit based on derivative sovereign immunity because the face of the complaint did not allege that the contractor had exceeded its authority under the contract). Without such a showing (or even an allegation), the Complaint should be dismissed. *Id.* But even if this Court undertakes a limited jurisdictional inquiry, the record confirms that GDIT has derivative sovereign immunity under *Yearsley*, and Mr. Cunningham's complaint should be dismissed.

**A.     Congress Did Not Waive the United States' Sovereign Immunity from TCPA Claims.**

The *Yearsley* analysis starts with a long-standing principle:  "[T]he United States is immune from all suits against it absent an express waiver of its immunity." *Welch, Jr. v. United States*, 409 F.3d 646, 650 (4th Cir. 2005). Any waiver "must be unequivocally expressed in statutory text." *Lane v. Pena*, 518 U.S. 187, 192 (1996). There is no such waiver here because the relevant TCPA prohibitions do not apply to the United States Government. The Supreme Court observed in a recent decision that it was "undisputed" that "[t]he United States and its agencies . . . are not subject to the TCPA's prohibitions because no statute lifts their immunity." *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672 (2016). By not subjecting itself to the TCPA's prohibitions, the United States has not waived its sovereign immunity from TCPA suits. The first *Yearsley* requirement is thus satisfied.

### B.      GDIT Performed under a Contract Validly Awarded by CMS.

The Fourth Circuit has recognized that "courts have extended derivative immunity to private contractors." *Butters*, 255 F.3d at 466.  As the court has explained:

> If absolute immunity protects a particular governmental function, no matter how many times or to what level that function is delegated, it is a small step to protect that function when delegated to private contractors, particularly in light of the government's unquestioned need to delegate governmental functions.   The government cannot perform all necessary and proper services itself and must therefore contract out some services for performance by the private sector.

*Mangold v. Analytic Servs., Inc.*, 77 F.3d 1442, 1447-48 (4th Cir. 1996).

That is precisely the case here.   When GDIT called Mr. Cunningham, GDIT was performing under a U.S. Government contract for services, a permissible means for CMS (and the Government more broadly) to meet its "unquestioned need to delegate governmental functions." *Butters*, 225 F.3d at 466; *see supra* pp. 2-4 (describing the Contract); *see generally* 41 U.S.C. Div. C (provisions governing contracting by civilian agencies such as CMS).  As a general matter, the Government regularly awards contracts for inbound and outbound call-center operations.   *See, e.g.*, U.S. Army RFP No. W9124J-16-R-0050 (solicitation for inbound/outbound call center for Wounded Soldier Family Hotline) (posted May 10, 2016), *available at* https://www.fbo.gov/index?s=opportunity&mode=form&tab=core&id=7960688 ec91e4ef5ff8e07764c91f4a8.   In addition, the substance of the call to Mr. Cunningham was permissible.   The Supreme Court has twice held that the ACA is constitutional.   *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566 (2012); *King v. Burwell*, 135 S. Ct. 2480 (2015).   The call to Cunningham thus merely enhanced awareness of a national, constitutionally-valid program.   Indeed, under the ACA, *see* ACA § 1411(e)(4)(A)(i), CMS has a duty to keep an applicant informed about healthcare security pursuant to the ACA, *see* CMS Decl. ¶ 5, and the message to Mr. Cunningham provided information that open enrollment was coming to an end

10

and that he may be eligible for federal financial assistance.  *See supra* pp. 6; CMS Decl. ¶ 10.

Thus, CMS' "authority to carry out" calls under the Contract "was validly conferred" to GDIT.

*See Campbell-Ewald*, 136 S. Ct. at 673.  The second *Yearsley* requirement is satisfied as well.

### C.   The Contract Dictated, and CMS Directed, GDIT's Actions.

GDIT also satisfies the final requirement for being "entitled to derivative sovereign

immunity" because "it adhered to the terms of its contract with the government."  *In re KBR,*

*Inc., Burn Pit Litig.*, 744 F.3d 326, 345 (4th Cir. 2014).  Put simply, the Contract required GDIT

to conduct outbound autodial calling as directed by CMS.  *See* CMS Decl. ¶ 4.  And GDIT

executed the call to Mr. Cunningham in accordance with its Contract terms and express direction

from CMS.  *See* GDIT Decl. ¶¶ 9-17.

More specifically, the Contract's Statement of Work provided that "[i]f required, the

contractor shall make outbound calls to support customer service needs."  CMS Decl. Ex. A §

4.1.1.  The Statement of Work also expressly stated that CMS could require GDIT to make

outbound calls via "auto-dial message campaigns (subject to state law) utilizing system

generated call technology."  *Id.*; *see also* CMS Decl. ¶ 4 ("CMS issued a subsequent contract

modification to require GDIT to use autodialing technology to initiate outbound telephone calls

on behalf of CMS.").  The Contract did not require GDIT to obtain or confirm consent for the

individuals who were to be called, as that responsibility resided with CMS.  *See generally* CMS

Decl. Ex. A § 4; GDIT Decl. ¶ 8.

GDIT performed the Contract as directed by CMS.  First, CMS provided GDIT with Mr.

Cunningham's telephone number (the same number Mr. Cunningham identifies in Paragraph 15

of the Complaint) to call on a specific date.  CMS mandated that the call be made via "auto dial"

and directed GDIT to use auto-dialing technology.  *See* CMS Decl. ¶¶ 8-10; GDIT Decl. ¶ 12;

Exs. 8, 9.  In accordance with CMS' November 25 instructions, GDIT was to call Mr.

Cunningham's phone number at 11:00 AM on Wednesday, December 2, 2015. *See* GDIT Decl.

¶¶ 16-17.

Second, CMS provided written direction to GDIT with an exact script for the call to Mr.

Cunningham. *See* CMS Decl. ¶¶ 8-10; GDIT Decl. ¶¶ 9, 11. Specifically, on November 25,

2015, CMS sent an email to GDIT with the subject line "Auto Dial-Week 4," with instructions

for the outbound call that GDIT was to facilitate during the week of November 30. GDIT Decl.

¶ 11; Ex. 8. As relevant here, CMS directed GDIT to provide "Message E"—associated with a

new HealthCare.gov applicant—to Mr. Cunningham's phone number on December 2. *Id.*; *see*

*also* Ex. 6. As described in CMS' "Auto-dial Scripts for Testing Period," which had been

provided to GDIT on November 6, the script for Message E mirrored the language alleged in

Paragraph 15 of the Complaint:

> Hello! This is an important message from HealthCare.gov. The deadline to enroll
> in a 2016 health insurance plan is coming soon. You may be able to qualify for
> financial help to make health insurance more affordable. With financial help,
> most people can find plans for $75 or less per month. Visit HealthCare.gov today
> to see how much you can save. If you have questions, you can call the Health
> Insurance Marketplace to talk to a trained enrollment specialist at 1-800-318-
> 2596…That's 1-800-318-2596. We are available 24 hours a day and the call is
> free. Don't forget - the deadline to enroll is Tuesday, December 15th. If you've
> already taken action and have 2016 health coverage, please ignore this message.
> Thank You! Goodbye.

Ex. 7 at 13; GDIT Decl. ¶ 9.

Finally, as directed by CMS, GDIT caused to be dialed the CMS-provided telephone

number for Mr. Cunningham through use of its vendor cloud-based autodialing service,

interCloud9, at the appointed time on December 2. GDIT Decl. ¶ 17. Thus, GDIT strictly

"adhere[d] to the government's instructions" when executing the call in performance of its

Contract with CMS. *See Burn Pit Litig.*, 744 F.3d at 345. The third *Yearsley* requirement is also

12

satisfied, and GDIT is entitled "to enjoy derivative sovereign immunity." *Id.* The Complaint

should therefore be dismissed.[6]

## II.    THE COURT SHOULD DISMISS THE COMPLAINT FOR FAILURE TO JOIN CMS AS A NECESSARY AND INDISPENSABLE PARTY.

The Complaint should also be dismissed because CMS is a necessary, unavailable, and

indispensable party. "Federal Rule of Civil Procedure 19 sets forth a two-step inquiry for a

district court to determine whether a party should be joined in an action." *Nat'l Union Fire Ins.*

*Co. of Pittsburgh, PA v. Rite Aid of S. Carolina, Inc.*, 210 F.3d 246, 249 (4th Cir. 2000).

"[C]ourts must first ask 'whether a party is necessary to a proceeding because of its relationship

to the matter under consideration' pursuant to Rule 19(a)." *Owens-Illinois, Inc. v. Meade*, 186

F.3d 435, 440 (4th Cir. 1999) (quoting Fed. R. Civ. P. 19).   "Second, 'if a necessary party is

unavailable for some reason, it must be determined whether the party is "indispensable" to the

case, in that the party's appearance is so essential that the case must be dismissed.'" *ADI Const.*

*of Va. LLC v. Bordewick*, No. 1:13CV598 JCC/IDD, 2013 WL 3730084, at *3 (E.D. Va. July 12,

2013) (quoting *DPR Const., Inc. v. IKEA Property, Inc.*, No. 1:05cv259, 2005 WL 1667778, at

*2 (E.D. Va. July 5, 2005)).  The dismissal decision "must be made pragmatically, in the context

of the substance of each case, rather than by procedural formula, by considering the practical

---

[6] GDIT's responsibilities under the Contract—and its execution of its responsibilities—differ significantly from the contractor's responsibilities in *Campbell-Ewald*.  There, the contractor (Campbell-Ewald) developed certain multimedia recruiting campaigns, drafted the specific text at issue, proposed the entire campaign to the U.S. Navy, and subcontracted to obtain a list of cell phone numbers for users between certain ages.  In addition, Campbell-Ewald did not comply with the Navy's specific direction to contact only individuals who had "opted in" to receiving solicitations.  *Campbell-Ewald*, 136 S. Ct. at 673-74.  On these facts, the Supreme Court concluded that Campbell-Ewald was not entitled to derivative sovereign immunity.  *Id.* at 674. In contrast, GDIT had no control over the script used or the telephone numbers to be called, it was not required to obtain consent from the recipients, and it followed the direction it received from CMS.

potential for prejudice to all parties, including those not before it." *Owens-Illinois, Inc.*, 186 F.3d at 441 (internal quotations and citations omitted).

Because Mr. Cunningham's claims directly implicate CMS' Contract with GDIT and its compliance with the TCPA, and CMS cannot be joined because of sovereign immunity, this case should be dismissed under Rule 19.

### A.     CMS Is a Necessary Party.

Rule 19(a) provides that a party is "necessary" if:

> (1) in that person's absence, the court cannot accord complete relief among existing parties; or (2) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(A)-(B).   Permitting this action to go forward would both "impair or impede" CMS' ability to protect its interest in this litigation and subject GDIT to a "substantial risk of incurring" conflicting legal obligations.

First, Mr. Cunningham's suit would "impair or impede" CMS' interest in its Contract directing GDIT to perform outbound public service calling regarding HealthCare.gov.   "In applying Rule 19, the Fourth Circuit has found that 'all parties to a contract, and others having a substantial interest in it, are necessary parties.'"  *ADI Const.*, 2013 WL 3730084, at *3 (quoting *Delta Financial Corp. v. Paul D. Comanduras & Assoc.*, 973 F.2d 301, 305 (4th Cir. 1992) (citations omitted)).   Indeed, "a party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract."  *Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1157 (9th Cir. 2002); *see also Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551-53 (4th Cir. 2006) (citing *Dawavendewa* with approval); *Clinton v. Babbitt*, 180 F.3d 1081, 1088 (9th Cir. 1999) ("[A] district court cannot

14

adjudicate an attack on the terms of a negotiated agreement without jurisdiction over the parties to that agreement.").

The Fourth Circuit addressed this principle in *Yashenko*. There, the plaintiff sued his former casino employer alleging that he suffered unlawful discrimination based on the casino's Native American tribal hiring preference. *Yashenko*, 446 F.3d at 551-52. That hiring preference was established in a management agreement between the casino and the Eastern Band of Cherokee Indians ("Tribe"). *See id.* at 544. Applying the Ninth Circuit's analysis in *Dawavendewa*, the Fourth Circuit held that "due to the Management Agreement between [the casino] and the Tribe, Yashenko cannot assert a § 1981 claim against [the casino] unless he joins the Tribe as a party to the lawsuit, and the Tribe enjoys sovereign immunity from suit." *Id.* at 552. Among other things, the court explained that, as in *Dawavendewa*, "any judgment on such a claim would threaten 'to impair the [Tribe]'s contractual interests, and thus, its fundamental economic relationship with' the private party, as well as 'its sovereign capacity to negotiate contracts and, in general, to govern' the reservation." *Id.* at 553 (quoting *Dawavendwa*, 276 F.3d at 1157).

As in *Yashenko*, Mr. Cunningham's suit threatens to invalidate aspects of CMS' Contract with GDIT. Mr. Cunningham alleges that GDIT violated the TCPA by using an autodial program to telephone him with information about HealthCare.gov, and in addition to damages, seeks to enjoin GDIT from "violating the TCPA." Compl. ¶ D. However, in making the call to Mr. Cunningham, GDIT was, like the casino in *Yashenko*, acting at the direction of CMS and complying with the express terms of its Contract with CMS. *See* CMS Decl. ¶ 4, Ex. A § 4.1.1; GDIT Decl. ¶¶ 12, 16-17; Ex. 6 (instructions from CMS to make the call in question via Auto Dial). In other words, in challenging GDIT's actions, Cunningham is directly challenging CMS'

Contract and seeking to enjoin performance of the Contract (as well as contracts with other vendors performing the same or similar call services).  Therefore, this suit threatens "to impair [CMS]'s contractual interests, and thus, its fundamental economic relationship with" GDIT, as well as CMS' "sovereign capacity to negotiate contracts and, in general, to govern" the ACA. *See Yashenko*, 446 F.3d at 552.  CMS is thus a necessary party for this reason alone.

Second, Cunningham's suit would "impair or impede" CMS' ability to defend against allegations that its administration of outbound public service calling related to the ACA violates the TCPA.  CMS had full control and responsibility over obtaining the requisite consents under the TCPA.  *See* CMS Decl. ¶¶ 7-8; GDIT Decl. ¶ 8.  CMS obtained consents through its HealthCare.gov website, which required applicants to accept CMS' policy statement authorizing CMS to provide information about HealthCare.gov over the telephone.  *See id.*  If the case proceeds to the merits, the Court will be required to decide whether this consent process violated the TCPA.

GDIT cannot be expected to adequately represent CMS on this issue.  Although it is possible for a party to adequately represent the interests of a non-party, "[a] court should hesitate to conclude . . . that a litigant can serve as a proxy for an absent party unless the interests of the two are identical." *Nat'l Union*, 210 F.3d at 251.  Here, GDIT had no role in the consent process and no insight into how consents were obtained.  *See* CMS Decl. ¶¶ 7-8; GDIT Decl. ¶ 8.  Thus, only CMS has the necessary knowledge and capability to fully defend the process.

Moreover, GDIT's interests are not identical to CMS'.  How consent is obtained both implicates the HealthCare.gov application process (and in particular, the CMS policy) and affects how information about the program is disseminated to applicants, thereby affecting CMS' ability to administer its program.  Indeed, CMS has a public service duty to keep an applicant informed

about healthcare security pursuant to the ACA.  *See* CMS Decl. ¶ 5.  GDIT cannot be expected to defend these national programmatic interests.  CMS is thus a necessary party for this additional reason.

Finally, "'[a]ny disposition in the [the Government]'s absence threatens to leave [GDIT] subject to substantial risk of incurring multiple or inconsistent obligations.'"  *Yashenko*, 446 F.3d at 553 (quoting *Dawavendwa*, 276 F.3d at 1157).  Put simply, even if the Court were to somehow determine that GDIT's call violated the TCPA and that Mr. Cunningham did not provide the requisite consent, CMS could still seek to enforce its Contract against GDIT.  *See Dawavendwa*, 276 F.3d at 1158 ("[A]lthough an injunction may compel [the defendant] to stop its hiring preference policy and to hire Dawavendewa, an injunction would not bind the Nation, which could continue to enforce the hiring preference policy required by the lease.").  "This scenario leaves [GDIT] facing intractable, mutually exclusive alternatives and thus, subjects [GDIT] to the substantial risk of facing multiple, inconsistent obligations."  *Id.*  Thus, CMS is also a necessary party under Rule 19(a)(2)(ii).

## B.      CMS Cannot Be Made a Party to the Action.

Although CMS is a "necessary" party to this lawsuit, it "cannot be made a party."  *See* Fed. R. Civ. P. 19(b).  As explained, CMS is immune from suit under the TCPA.  *See Campbell-Ewald*, 136 S. Ct. at 672.   And as the Fourth Circuit has held, a party entitled to sovereign immunity is unavailable for purposes of Rule 19.  *See Yashenko*, 446 F.3d at 553 ("Although the Tribe is a necessary party, because of its status as a sovereign nation, the Tribe cannot 'feasibly be joined as a party' to the action." (internal citation omitted)); *Dawavendewa*, 276 F.3d at 1161.

## C.      CMS Is Indispensable.

"If joinder is not possible under Rule 19(a), then the Court must consider whether the party is 'indispensable' under Rule 19(b), in that they are so essential to the case that it otherwise

must be dismissed." *ADI Const.*, 2013 WL 3730084, at *4.  The factors to be considered by the court include:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).  CMS is plainly an indispensable party here.

First, CMS would be prejudiced if the suit proceeds in its absence.  As explained *supra*,[7]

CMS' Contract with GDIT could be effectively invalidated in part or rendered illegal by a ruling

in this case.  Moreover, a ruling here could undermine CMS' ability to administer the ACA in

the future, to the extent it prevents CMS from contracting to efficiently and effectively contact an

applicant with important public service information regarding HealthCare.gov.  *See* CMS Decl. ¶

12 ("CMS must be able to efficiently and cost-effectively contact prospective applicants for

health coverage to perform its statutorily-mandated duties under the ACA and may enter into

contracts with private entities (such as GDIT) to assist CMS in making such contacts.").  CMS

must be able to contract with private entities to conduct outbound calling, *see id.*, and if CMS'

consent process is deemed inadequate under the TCPA, CMS may have no ability to hire

contractors to conduct outbound calling, because consent is obtained through the HealthCare.gov

website operated by CMS.  *See Yashenko*, 446 F.3d at 553 ("[A]ny judgment on the § 1981 claim

would prejudice the Tribe's economic interests in the Management Agreement with Harrah's and

---

[7] As the Fourth Circuit has explained, "[t]his factor addresses many of the same concerns as Rule 19(a)(2)." *Nat'l Union*, 210 F.3d at 252; *see also Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1024-25 (9th Cir. 2002) ("Not surprisingly, the first factor of prejudice, insofar as it focuses on the absent party, largely duplicates the consideration that made a party necessary under Rule 19(a): a protectible [sic] interest that will be impaired or impeded by the party's absence.").

its interests as a sovereign in negotiating contracts and governing its reservation."); *cf. Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1025 (9th Cir. 2002) ("The amount of prejudice to the tribes from termination of existing compacts and inability to enter new ones would be enormous."). As the Fourth Circuit has explained, prejudice is "particularly strong" where the "suit concerns [the non-party's] conduct." *See Nat'l Union*, 210 F.3d at 252.

GDIT would likewise be prejudiced in CMS' absence. GDIT would be forced to defend against alleged TCPA violations with no direct control of or insight into how CMS obtained the requisite consents. And a judgment could potentially compel GDIT to violate its contractual obligations to CMS. *See Yashenko*, 446 F.3d at 553 ("[A]ny such judgment rendered in the absence of the Tribe would prejudice Harrah's because it would hinder its ability to resolve its contractual obligations with the Tribe.").

Second, the Court could not "tailor relief to lessen or avoid the prejudice" to CMS. *See Nat'l Union*, 210 F.3d at 253. Because GDIT was acting at CMS' direction pursuant to the parties' Contract, *see* CMS Decl. ¶ 4, Ex. A § 4.1.1; GDIT Decl. ¶¶ 12, 16-18; Ex. 6, there is no way for the Court to avoid addressing whether the Contract violates the TCPA and whether CMS' consent procedures are sufficient. *See Owens-Illinois*, 186 F.3d at 442 (noting that in order to reach merits of the petition to compel arbitration, district court could not have avoided addressing the validity and applicability of settlement agreement's arbitration provision); *Teamsters Local Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 919 (4th Cir. 1999) (noting that in order to reach merits of the case, district court could not have avoided addressing the validity of the joint grievance panel's interpretation of collective bargaining agreement).

Third, a judgment without CMS will not be adequate. As in *Yashenko*, a judgment here "would bind only [Cunningham] and [GDIT]." 446 F.3d at 553. CMS "would remain free to

enforce [the ACA] through its contractual relations." *Id.*; *see also Am. Greyhound Racing, Inc.*, 305 F.3d at 1025 ("If [plaintiffs] retain the judgment as it was entered by the district court, they have achieved what they sought but the tribes' protectible [sic] interests are impaired.").

Finally, a party's immunity from suit regularly overcomes even the total absence of an alternative forum or remedy for a plaintiff. CMS' "interest in maintaining [its] sovereign immunity outweighs [Cunningham's] interest in litigating [his] claims." *Am. Greyhound Racing, Inc.*, 305 F.3d at 1025. Indeed, in *Yashenko*, the Fourth Circuit did not bother to address this factor in finding the Tribe—which possessed sovereign immunity—was an indispensable party and granting dismissal. 446 F.3d at 553. CMS is a necessary and indispensable party, and this case must be dismissed because CMS is immune from suit.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant GDIT's motion to dismiss for lack of subject matter jurisdiction and failure to join a necessary party.

20

Dated:  July 11, 2016

GENERAL DYNAMICS INFORMATION
TECHNOLOGY INC.

By counsel

_____/s/ Attison L. Barnes, III_____
Attison L. Barnes, III (VA Bar No. 30458)
Scott M. McCaleb (for *pro hac vice*)
Scott D. Delacourt (for *pro hac vice*)
Stephen J. Obermeier (VA Bar No. 89849)
Tracye W. Howard (for *pro hac vice*)
WILEY REIN, LLP
1776 K Street, NW
Washington, D.C. 20006
Tel:   (202) 719-7000
Fax:  (202) 719-7049
abarnes@wileyrein.com
smaccaleb@wileyrein.com
sdelacourt@wileyrein.com
sobermeier@wileyrein.com
twhoward@wileyrein.com

Neil H. MacBride (Va Bar 79883)
Paul S. Mishkin (*pro hac vice* pending)
DAVIS POLK & WARDWELL LLP
901 15th Street, N.W.
Washington, D.C. 20005
Telephone:  (202) 962-7000
Facsimile: (202) 962-7111
neil.macbride@davispolk.com
paul.mishkin@davispolk.com

*Counsel for Defendant*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 11, 2016, I served the foregoing document electronically on the following:

John M. Bredehoft
Sharon Kerk Reyes
KAUFMAN & CANOLES, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510
Telephone:  (757) 624-3000
Facsimile:  (888) 360-9092
jmbredehoft@kaufcan.com
skreyes@kaufcan.com

Aytan Y. Bellin
BELLIN & ASSOCIATES LLC
50 Main Street, Suite 1000
White Plains, NY 10606
Telephone:  (914) 358-5345
Facsimile:  (202) 571-0284
aytan.bellin@bellinlaw.com


    /s/  Attison L. Barnes, III
    Attison L. Barnes, III