**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-1592

CRAIG CUNNINGHAM, on behalf of himself and all others similarly situated,

        Plaintiff - Appellant,

  v.

GENERAL DYNAMICS INFORMATION TECHNOLOGY, INC.,

        Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Liam O'Grady, District Judge. (1:16-cv-00545-LO-TCB)

Argued: January 24, 2018                            Decided: April 24, 2018

Before TRAXLER and FLOYD, Circuit Judges, and SHEDD, Senior Circuit Judge.

Affirmed by published opinion. Judge Floyd wrote the opinion in which Judge Traxler and Senior Judge Shedd joined.

**ARGUED:** Aytan Yehoshua Bellin, BELLIN & ASSOCIATES LLC, White Plains, New York, for Appellant. James P. Rouhandeh, DAVIS, POLK & WARDWELL, LLP, New York, New York, for Appellee. **ON BRIEF:** Roger Furman, Los Angeles, California, for Appellant. Neil H. MacBride, Washington, D.C., Paul S. Mishkin, DAVIS POLK & WARDWELL LLP, New York, New York; Attison L. Barnes, III, Stephen J. Obermeier, WILEY REIN LLP, Washington, D.C., for Appellee.

FLOYD, Circuit Judge:

Greg Cunningham alleges that he received an autodialed, prerecorded phone call from General Dynamics Information Technology, Inc. ("GDIT") advertising the commercial availability of health insurance, without having given his prior express consent, in violation of the Telephone Consumer Protection Act ("TCPA"). The district court granted GDIT's motion to dismiss for lack of subject matter jurisdiction on the ground that GDIT is immune from suit under the *Yearsley* doctrine, which immunizes government contractors from suit when the government authorized the contractor's actions and the government validly conferred that authorization. *Yearsley v. W. A. Ross Constr. Co.*, 309 U.S. 18, 20–21 (1940).

On appeal, Cunningham argues that the district court erred in conferring *Yearsley* immunity and consequently dismissing the suit for three distinct reasons. First, he asserts that the *Yearsley* doctrine does not apply as a matter of law to federal claims. Next, he asserts that GDIT fails to qualify for *Yearsley* immunity both because the government did not authorize its actions and because the authorization was not validly conferred. Finally, he asserts that even if *Yearsley* immunity applies, *Yearsley* is a merits defense from liability rather than a jurisdictional immunity. We find these arguments unpersuasive, and now affirm the district court's dismissal for lack of subject matter jurisdiction.

I.

A.

Pursuant to the doctrine of sovereign immunity, the United States is immune from private civil actions absent an express waiver. *Kerns v. United States*, 585 F.3d 187, 193–94 (4th Cir. 2009) (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). Under the concept of derivative sovereign immunity, stemming from the Supreme Court's decision in *Yearsley*, 309 U.S. at 20–21, agents of the sovereign are also sometimes protected from liability for carrying out the sovereign's will. *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 341–42 (4th Cir. 2014) (internal quotation marks omitted) (interpreting *Yearsley* as recognizing that private employees should receive immunity from suit when they perform the same functions as government employees). This immunity derives from "'the government's unquestioned need to delegate governmental functions,'" and the acknowledgement that "[i]mposing liability on private agents of the government would directly impede the significant governmental interest in the completion of its work." *Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 466 (4th Cir. 2000) (quoting *Mangold v. Analytic Servs., Inc.*, 77 F.3d 1442, 1448 (4th Cir. 1996)). "[U]nder *Yearsley*, a government contractor is not subject to suit if (1) the government authorized the contractor's actions and (2) the government 'validly conferred' that authorization, meaning it acted within its constitutional power." *In re KBR*, 744 F.3d at 342 (citing *Yearsley*, 309 U.S. at 20–21).

B.

On appeal, we review whether the district court erred in conferring *Yearsley* immunity on GDIT's phone call to Cunningham.[1]  As relevant here, the Affordable Care Act ("ACA") directs the U.S. Department of Health and Human Services, Centers for Medicare & Medicaid Services ("CMS") to establish a system to keep applicants informed about their eligibility for enrollment in a qualified health plan.  *See* 42 U.S.C. § 18083(a), (b)(2), (e).  CMS maintains the HealthCare.gov website, through which individuals may enroll for health coverage under the ACA using an online application.  The online application requires visitors to provide their name and phone number, and accept CMS's privacy policy by affirmatively clicking an "Accept" box acknowledging, *inter alia*, that CMS may use the phone number provided to contact them with more information.

To carry out their statutorily mandated obligations under the ACA, CMS awarded a contract to Vangent, Inc., which subsequently merged into GDIT, for contact center operations support for CMS programs, including the HealthCare.gov website.  Under the contract, GDIT was required to make phone calls from January 1, 2015, through May 16, 2016, to inform individuals about their ability to buy health insurance through the health insurance exchanges created by the ACA.  In accordance with this instruction, CMS authorized GDIT to use an autodialer to make the calls, provided a script for each call,

---

[1] Cunningham filed this claim as a putative class action, alleging that GDIT made hundreds of thousands of autodialed, prerecorded phone calls in violation of the TCPA.  For convenience, we refer only to the disputed call to Cunningham.

and provided a list of phone numbers for each call. Section 17 of the CMS-GDIT contract also required GDIT to "maintain a corporate compliance program" that included "[a]n internal monitoring and auditing function to help ensure compliance with statutes [and] regulations," and "[a]n enforcement and disciplinary process to address violations of applicable statutes [and] regulations . . . ." J.A. 731–32.

On December 1, 2015, pursuant to the ACA's statutory mandate, CMS sent GDIT approximately 2.65 million telephone numbers and directed GDIT to call each of those numbers over the next five days in accordance with their contract. The numbers were divided into seven lists specifying the exact day that GDIT was to call each number and which of the scripts CMS provided that GDIT was to use for each call. One of CMS's lists directed GDIT to call Cunningham's cell phone and approximately 680,000 other numbers the next day, December 2, 2015. GDIT made the autodialed, prerecorded call to Cunningham's cell phone on December 2, 2015. When Cunningham did not pick up, the prerecorded message left the following approximately 30-second voicemail message:

> Hello! This is an important message from HealthCare.gov. The deadline to enroll in a 2016 health insurance plan is coming soon. You may be able to qualify for financial help to make health insurance more affordable. With financial help, most people can find plans for $75 or less per month. Visit HealthCare.gov today to see how much you can save. If you have questions, you can call the Health Insurance Marketplace to talk to a trained enrollment specialist at 1-800-318-2596. That's 1-800-318-2596. We are available 24 hours a day and the call is free. Don't forget—the deadline to enroll is Tuesday, December 15th. If you've already taken action and have 2016 health coverage, please ignore this message. Thank You! Goodbye.

J.A. 28. This message was identical to the script CMS provided GDIT.

Cunningham alleges that he received this autodialed, prerecorded phone call from

GDIT advertising the commercial availability of health insurance without having given his prior consent, in violation of the TCPA.[2] As relevant here, the TCPA prohibits any person, absent the prior express consent of the recipient, from "mak[ing] any call . . . using any automatic telephone dialing system . . . to a paging service [or] cellular telephone service . . . ."  Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A)(3).  The TCPA also authorizes a private right of action for conduct violating the Act.  § 227(b)(3).  However, "[t]he United States and its agencies, it is undisputed, are not subject to the TCPA's prohibitions because no statute lifts their immunity." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672 (2016).  Thus, GDIT would also be immune from liability for making this phone call if derivative sovereign immunity applies.

Cunningham commenced this putative class action suit against GDIT on May 16, 2016, seeking damages and injunctive relief as authorized under the TCPA.  *See* 47 U.S.C. § 227(b)(1)(A)(iii), (b)(1)(B), (b)(3).  GDIT moved to dismiss for lack of subject matter jurisdiction on the ground that GDIT is immune from suit under the *Yearsley*

---

[2] GDIT asserts that Cunningham did in fact consent to the phone call by starting an application on the HealthCare.gov website on November 18, 2015, providing his cell phone number, and affirmatively accepting the privacy policy that stated applicants may be contacted with more information.  However, the merits of whether Cunningham gave consent are not before the Court; we are solely considering the applicability of the *Yearsley* doctrine, and this disputed fact is inconsequential to our analysis.  *See Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 453 (4th Cir. 2012) (holding that disputes over whether plaintiff would be able to prove the elements of his cause of action "must be resolved either by a Rule 56 motion or by trial," and were not relevant to whether the court had jurisdiction).

doctrine.³ *See* Fed. R. Civ. P. 12(b)(1). On October 18, 2016, the district court issued an interim order concluding that GDIT was entitled to *Yearsley* immunity, and granted limited jurisdictional discovery for Cunningham to contest this determination. The district court issued this order, in part, because it concluded that CMS had "authorized and instructed GDIT to do *exactly* what it did." J.A. 259. Discovery lasted 75 days and included six subpoenas, four Touhy requests, numerous document requests, six depositions of GDIT and CMS employees, and supplemental briefing on the issue. On May 1, 2017, the district court granted GDIT's motion to dismiss for lack of subject matter jurisdiction on the ground that GDIT was immune from suit under the *Yearsley* doctrine. This appeal followed.

II.

In reviewing a district court's order dismissing an action for lack of subject matter jurisdiction, this Court reviews conclusions of law de novo and findings of fact for clear error. *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004). To conclude that a district court's factual finding is clearly erroneous, the reviewing court must be "left with the definite and firm conviction that a mistake has been committed." *HSBC Bank USA v. F & M Bank N. Va.*, 246 F.3d 335, 338 (4th Cir. 2001) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)).

---

³ GDIT also filed motions to dismiss for failure to state a claim and failure to join CMS as a necessary party. Fed. R. Civ. P. 12(b)(6), (7).

III.

In his first claim on appeal, Cunningham asserts that the *Yearsley* doctrine does not apply as a matter of law to federal claims. Instead, he claims that *Yearsley* only applies when a federal contract or federal directive displaces *state* law to absolve government contractors from *state* law liability. Finding nothing in *Yearsley* or its progeny that limits its application solely to state law liability, we disagree.

We begin our analysis with the language in *Yearsley* itself. In describing the immunity, we find no language indicating that the Supreme Court intended to limit its holding to claims arising under state law. *See Yearsley*, 309 U.S. at 20–21 ("[I]t is clear that if this authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress, there is no liability on the part of the contractor for executing its will." (citations omitted)). Additionally, the Supreme Court identified instances when government contractors were not immune from liability, and notably did not mention federal law claims. *See id.* at 21 ("Where an agent or officer of the Government purporting to act on its behalf has been held to be liable for his conduct causing injury to another, the ground of liability has been found to be either that he exceeded his authority or that it was not validly conferred." (citations omitted)). The test the Supreme Court outlined for conferring *Yearsley* immunity, therefore, omitted any requirement that the claim arise under state law and omitted any reference to exempting federal law liability from its reach. *Yearsley*'s progeny have also failed to make any such distinction. *See, e.g.*, *Campbell-Ewald*, 136 S. Ct. at 672–73 (reaffirming the basic requirements of *Yearsley* applicability without implying that its grant of immunity was

8

limited to state law liability).

*Yearsley* immunity has also been applied to federal causes of action and, most recently, the Supreme Court even addressed *Yearsley* in relation to the TCPA—the same federal law at issue here. *See, e.g., id.* at 672 (concluding that *Yearsley* may immunize violations of the TCPA); *Yearsley*, 309 U.S. at 22–23 (applying *Yearsley* immunity to a claim arising under the Takings Clause of the Constitution); *Tozer v. LTV Corp.*, 792 F.2d 403, 405 (4th Cir. 1986), *cert. denied*, 487 U.S. 1233 (1988) (concluding that a military contractor could assert a *Yearsley* defense to a federal cause of action).[4] Consequently, we hold that the *Yearsley* doctrine applies to claims arising under federal law.

IV.

Next, Cunningham attacks the merits of the district court's decision by asserting that GDIT fails to satisfy either prong required under *Yearsley*. We disagree.

"[U]nder *Yearsley*, a government contractor is not subject to suit if (1) the government authorized the contractor's actions and (2) the government 'validly

---

[4] Cunningham also argues that even if *Yearsley*, standing alone, could be interpreted to apply to claims arising under federal law, *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988), limited *Yearsley*'s applicability to state law claims. The Supreme Court implicitly rejected this argument in *Campbell-Ewald* when it analyzed whether a federal contractor was immune from suit under *Yearsley* for violations of the TCPA—a federal law. 136 S. Ct. at 672–74. Additionally, as we stated in *In re KBR*, *Boyle* is inapposite to determining the applicability of derivative sovereign immunity. *In re KBR*, 744 F.3d at 342 n.6 (distinguishing between the *Boyle* preemption analysis and the *Yearsley* immunity analysis). Therefore, we decline to address Cunningham's arguments related to *Boyle*.

conferred' that authorization, meaning it acted within its constitutional power." *In re KBR*, 744 F.3d at 342 (citing *Yearsley*, 309 U.S. at 20–21). Recently, the Supreme Court reaffirmed this test and expressly stated that as long as the authorization was validly conferred, " 'there is no liability on the part of the contractor' who simply performed as the Government directed." *Campbell-Ewald*, 136 S. Ct. at 673 (quoting *Yearsley*, 309 U.S. at 20–21). Authorization is "validly conferred" on a contractor if Congress authorized the government agency to perform a task and empowered the agency to delegate that task to the contractor, provided it was within the power of Congress to grant the authorization. *See Yearsley*, 309 U.S. at 20; *In re KBR*, 744 F.3d at 342, 344 n.7.

Conversely, "[w]hen a contractor violates both federal law and the Government's explicit instructions, . . . no 'derivative immunity' shields the contractor from suit by persons adversely affected by the violation." *Campbell-Ewald*, 136 S. Ct. at 672; *see also Yearsley*, 309 U.S. at 21; *In re KBR*, 744 F.3d at 345 ("[*Yearsley*] suggests that the contractor must adhere to the government's instructions to enjoy derivative sovereign immunity; staying within the thematic umbrella of the work that the government authorized is not enough to render the contractor's activities 'the act[s] of the government.' " (alteration in original) (quoting *Yearsley*, 309 U.S. at 22)); *Myers v. United States*, 323 F.2d 580, 583 (9th Cir. 1963) (stating that a government contractor is not liable under *Yearsley* if the work was done under the contract and in conformity with the contract terms, but may be liable for damages from acts "over and beyond acts required to be performed" or acts "not in conformity" with the contract).

A.

Turning to the first step, we analyze whether the government authorized GDIT's actions. *In re KBR*, 744 F.3d at 342; *see also Yearsley*, 309 U.S. at 20–21. The ACA directs CMS to establish a system to keep applicants informed about their eligibility for enrollment in a qualified health plan. *See* 42 U.S.C. § 18083(a), (b)(2), (e). CMS contracted with GDIT to carry out this statutory mandate, and the contract required GDIT to call individuals about health insurance options. On December 1, 2016, CMS provided GDIT with a list of approximately 680,000 phone numbers, including Cunningham's cell phone number, and instructed GDIT to call the numbers on December 2, 2016, and leave a prerecorded message. The contract also permitted GDIT to use an autodialer to make the call. On December 2, 2016, GDIT used an autodialer to call Cunningham's cell phone number and left a voicemail with the exact script CMS had provided to GDIT. Quite plainly, GDIT performed exactly as CMS directed: GDIT called the number CMS instructed GDIT to call, on the prescribed day, and followed CMS's provided script when leaving the message.

Without contesting these facts, Cunningham nonetheless asserts that GDIT did *not* perform as CMS directed. Cunningham argues that Section 17 of the CMS-GDIT contract required GDIT to follow applicable laws, and that by failing to independently obtain prior consent from each name on the list provided by CMS to ensure compliance with the TCPA, GDIT violated the contract, requiring this Court to find that CMS did not authorize GDIT's actions. This argument is unavailing. There is no indication that GDIT was authorized to contact these individuals other than to place the automated call, and

GDIT was not permitted to deviate from the script provided. Deposition testimony from Naomi Johnson, the CMS Contracting Officer Representative, confirmed that CMS did not direct GDIT to obtain consent from the individuals on the call lists CMS provided, did not direct GDIT to investigate the numbers provided, and did not expect GDIT to obtain consent before making the calls. Therefore, we conclude that GDIT did not violate the contract by failing to independently obtain consent to make the phone call CMS instructed it to make.

Notably, this scenario is vastly distinguishable from the facts of *Campbell-Ewald*. In that case, plaintiffs similarly alleged that a government contractor violated the TCPA by failing to get prior consent to send text messages as part of a recruiting campaign for the United States Navy. *Campbell-Ewald*, 136 S. Ct. at 667. There, however, the contract expressly provided that it was the *contractor*'s responsibility to generate a list of the phone numbers of those who had opted in to receive the marketing, and the government's approval of sending the message was conditioned on this consent. *Id.* at 673–74. The contractor, therefore, failed to adhere to the contract by not obtaining prior consent to send these messages and, by failing to obtain prior consent, had also violated the TCPA. *Id.* at 672–74. As a result of violating "both federal law and the Government's explicit instructions," the Supreme Court held that the contractor was not entitled to derivative sovereign immunity. *Id.* at 672.

Consequently, because GDIT adhered to the terms of its contract with CMS, we conclude that the government authorized GDIT's actions, satisfying step one of the *Yearsley* analysis.

B.

In analyzing the second step of the *Yearsley* immunity analysis, we consider whether the government "validly conferred" the authorization for GDIT to make this phone call. *In re KBR*, 744 F.3d at 342; *see also Yearsley*, 309 U.S. at 20–21. GDIT made this call pursuant to CMS's statutory mandate to administer the ACA and keep applicants informed about their eligibility for enrollment in a qualified health plan. *See* 42 U.S.C. § 18083(a), (b)(2), (e). There does not seem to be any dispute that the government can delegate the authority to make this automated phone call to GDIT. Instead, Cunningham argues that the government cannot "validly confer" the authority to engage in conduct that violates the law, and thus that CMS did not validly confer authority to GDIT to call him because making the phone call without prior consent violated the TCPA.[5] With this argument, Cunningham misinterprets the scope of

---

[5] In response, GDIT argues that even if the government directed GDIT to make this phone call without obtaining prior consent, the federal government and its common law agents are not subject to the TCPA, and therefore the government could not have directed the phone calls be made in *violation* of the TCPA because they were not required to comply with the TCPA. For this argument, GDIT points to a 2016 declaratory ruling issued by the Federal Communications Commission ("FCC") whereby the FCC interpreted § 227(b)(1)'s prohibition of calls made by any "*person*" as "not includ[ing] the federal government or agents acting within the scope of their agency under common-law principles of agency." *In re Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991*, CG Docket No. 02-278, 31 F.C.C. Rcd. 7394, 7398 (2016); *see id.* at 7394 ("[T]he TCPA does not apply to calls made by or on behalf of the federal government in the conduct of official government business, except when a call made by a contractor does not comply with the government's instructions."). Because we conclude that Cunningham's claim fails even if the government is subject to the TCPA, we decline to address this argument.

*Yearsley*'s second step. The question is not whether informing applicants of their enrollment eligibility violated the law, but rather whether Congress had the authority to assign GDIT to complete that task. *See Yearsley*, 309 U.S. at 20; *In re KBR*, 744 F.3d at 342, 344 n.7. The purpose of *Yearsley* immunity is to prevent a government contractor from facing liability for an alleged violation of law, and thus, it cannot be that an alleged violation of law per se precludes *Yearsley* immunity. Consequently, we reject Cunningham's overinclusive interpretation of what constitutes a "valid conferral" of authority under this prong. We conclude that the government validly conferred the authorization for GDIT to make this phone call, satisfying step two of the *Yearsley* immunity analysis.

Therefore, because the government authorized GDIT's actions and that authorization was validly conferred, we hold that the district court did not err in concluding that GDIT was entitled to derivative sovereign immunity for this claim.

V.

Finally, Cunningham asserts that even if the district court properly conferred *Yearsley* immunity on GDIT, the district court nonetheless erred in treating the *Yearsley* doctrine as immunity from suit and dismissing the case for lack of subject matter jurisdiction, rather than treating the doctrine as a merits defense to liability. *See* Fed. R. Civ. P. 12(b)(1). In advancing this argument, Cunningham asserts that neither the Supreme Court nor this Court has squarely addressed the issue of whether the *Yearsley* defense is jurisdictional, and that the "immunity" provided by *Yearsley* is not necessarily

14

a jurisdictional immunity. We again disagree.

As an initial matter, it is clear that "[i]f the basis for dismissing a *Yearsley* claim is *sovereign immunity*, then a *Yearsley* defense would be jurisdictional" because "sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction." *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009) (emphasis added) (ultimately concluding that *Yearsley* immunity does not deprive the court of subject matter jurisdiction); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Recently, in *In re KBR*, this Court reaffirmed that we treat the *Yearsley* doctrine as derivative sovereign immunity that confers jurisdictional immunity from suit. There, as here, the district court had dismissed the claim for lack of subject matter jurisdiction based on *Yearsley* immunity. *In re KBR*, 744 F.3d at 343. We stated that "[t]he concept of *derivative sovereign immunity* stems from the Supreme Court's decision in [*Yearsley*]," and that when the *Yearsley* doctrine applies, "a government contractor is *not subject to suit*." *Id.* at 342 (emphases added); *see also id.* at 344 ("*Yearsley* recognizes that private employees can perform the same functions as government employees and concludes that they should receive *immunity from suit* when they perform these functions." (emphasis added)). Ultimately, this Court concluded that the record did not contain enough evidence to determine whether the contractor was entitled to derivative sovereign immunity, and vacated the district court's decision and remanded for further

fact finding. *Id.* at 345. *See also Butters*, 225 F.3d at 466 (acknowledging the "well-settled law that contractors and common law agents acting within the scope of their employment for the United States have *derivative sovereign immunity*" and describing *Yearsley* as derivatively extending sovereign immunity to a private contractor acting pursuant to a contract with the United States (emphasis added)); *id.* (favorably referencing the Fifth Circuit's affirmance that a private individual "was *immune from suit*" when it followed the sovereign's orders (emphasis added) (citing *Alicog v. Kingdom of Saudi Arabia*, 860 F. Supp. 379, 384–84 (S.D. Tex. 1994), *aff'd*, 79 F.3d 1145 (5th Cir. 1996) (table decision))).

Although Cunningham argues that *In re KBR* cannot stand for the proposition that *Yearsley* immunity is jurisdictional because we did not affirm the jurisdiction-based dismissal of the claim, we reject this contention. This Court's express statements regarding *Yearsley* immunity and its implicit approval of using a Rule 12(b)(1) motion to dismiss to dispose of a case when the *Yearsley* doctrine applied compel us to conclude, once again, that the *Yearsley* doctrine operates as a jurisdictional bar to suit and not as a merits defense to liability. *See also Adkisson v. Jacobs Eng'g Grp., Inc.*, 790 F.3d 641, 646 (6th Cir. 2015) (acknowledging that the Fourth Circuit has held that *Yearsley* immunity is jurisdictional).

Cunningham's argument that the Supreme Court's recent decision in *Lewis v. Clarke* undermines this precedent is also unavailing. 137 S. Ct. 1285, 1291 (2017). Cunningham argues that *Lewis* confirms that incanting the word "immunity" does not necessarily result in immunity from suit, and that "sovereign immunity" is implicated

16

only where "the sovereign is the real party in interest," i.e., "whe[re] the remedy sought is truly against the sovereign." *Id.* at 1290–92 (holding that the Indian tribe's sovereign immunity did not bar a tort suit against a tribal employee to recover for his personal actions when he was operating a vehicle within the scope of his employment on state lands). Cunningham's reliance on *Lewis* is misplaced. In *Lewis*, the Supreme Court distinguished between suits against individual employees and suits against governmental instrumentalities, and expressly stated that "a suit against an arm or instrumentality of the State is treated as one against the State itself." *Id.* at 1293 (favorably referencing cases extending sovereign immunity to private healthcare insurance companies that were "essentially state instrumentalities," including *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71–71 (2d Cir. 1998)); *see also Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997) (stating that sovereign immunity from suit extends to "certain actions against state agents and state instrumentalities"). Because GDIT is an entity rather than an individual employee, and was fulfilling CMS's statutory mandate under the ACA by making this phone call to Cunningham, *Lewis* is inapplicable. *See Pani*, 152 F.3d at 71–72 (stating that a government agent that "acts on behalf of the [government] in carrying out certain administrative responsibilities that the law imposes" can be entitled to sovereign immunity, and citing cases holding the same). Thus, under these facts, *Lewis* does not undermine this Court's precedents holding that *Yearsley* immunity is a jurisdictional bar to suit, nor does it undermine our affirmance that derivative sovereign immunity be conferred on GDIT in this case.

  Notwithstanding that *Yearsley* immunity operates as a jurisdictional bar to suit, we

recognize that discovery may be appropriate before granting a Rule 12(b)(1) motion to dismiss on this basis. *See Kerns*, 585 F.3d at 193 (describing appropriate evidentiary proceedings when a court is considering a claim under Rule 12(b)(1)). When, as here, a party "challenges the veracity of the facts underpinning subject matter jurisdiction, the trial court may go beyond the complaint, conduct evidentiary proceedings, and resolve the disputed jurisdictional facts." *Id.*; *see also United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009). Here, the parties participated in 75 days of limited discovery on the applicability of *Yearsley*, which included six subpoenas, four Touhy requests, numerous other document requests, six depositions of GDIT and CMS employees, and supplemental briefing on the issue. We are satisfied that this discovery provided Cunningham with appropriate procedural safeguards and provided sufficient information for the district court to rule on GDIT's motion.

Consequently, we hold that the district court did not err in treating *Yearsley* applicability as a jurisdictional bar to suit and granting GDIT's Rule 12(b)(1) motion to dismiss on the basis that GDIT is immune from suit under the *Yearsley* doctrine.

## VI.

For the foregoing reasons, the judgment of the district court is hereby

*AFFIRMED*.